Case number 21-3051. United States of America versus Luz Irene Fajardo Campos, also known as Laco Madre, also known as Jenny Campos, also known as Jenny Uviles, also known as Janka Appellant. Mr. Axum for the appellant, Ms. Lloyd for the affiliate. Good morning, counsel. Good morning. Mr. Axum, please proceed when you're ready. May it please the court, counsel. Tony Axum representing the appellant Luz Fajardo Campos, and I'd like to reserve three minutes for rebuttal. There was no venue in Washington, D.C. Under the Constitution, venues shall be laid where the crime was committed. And where a crime is not committed in any state, Congress can choose where to set the location for venue. The charged conspiracy was committed in Arizona and Mississippi. Law enforcement seized drugs there and arrested alleged co-conspirators there. The offense was the agreement. These are conspiracy counts. What evidence is there that the conspiracy was hatched in Arizona? I'm not sure that the government presented evidence that the conspiracy was hatched in Arizona, but- But these are conspiracy counts. Only thing that matters is where the agreement took place. I think under the Constitution, the Constitution requires that venue be laid where the crime was committed, not- Where the crime was committed. Crime is the agreement. Well, we know that it was not committed in Washington, D.C. So the Constitution also says where the crime is not committed in any state, Congress can set the location for venue. So we know that the crime was not committed in Washington, D.C. Therefore, there's no authority to set venue in Washington, D.C. But it wasn't committed in the United States, right? It absolutely was committed in the United States. The agreement? Well, if we're talking about the formation of the agreement, I'm not sure that the government presented evidence as to where the formation of the agreement took place. There were certainly, there's certainly evidence that it did take place in Mexico. There's certainly evidence that it did take place in Arizona and Mississippi. But- Well, let's suppose, can I ask you this? Let's suppose that the agreement took place outside the United States. Then does Congress not have the authority to specify that venue can lay in the District of Columbia? Or is it a conspiracy offense where the agreement was reached abroad? Certainly, if all parts of the conspiracy took place abroad. But there are two phrases in the Constitution. One is where Congress should set, where venue must be set on when a crime is committed here. And when a crime is not committed here, the Constitution says, but when the crime is not committed within any state. We know that this crime, this conspiracy, and a conspiracy is a continuing offense. I mean, the government benefits from that all the time because they are allowed to establish venue in any location where the conspiracy was committed. The government runs away from that now because the conspiracy was committed. It was committed in Arizona and Mississippi, but under the Constitution, but when the Constitution says, but when the crime is not committed within any state, the trial shall be at such place or places as Congress can set. The plain text of the Constitution does not allow Congress to set venue wherever it wishes if the crime was committed in any state. We know that this conspiracy was committed in Arizona and Mississippi. I understand- I know object offenses occurred in those states. That seems different from the question whether the conspiracy itself happened there. I mean, yeah, it's a continuing offense in the sense that any crimes committed pursuant to the conspiracy can be attributed to the conspirators, but I mean, the agreement itself, it's an on-off switch. There's a conspiracy, it's formed, that's an offense, and it continues unless and until someone separately withdraws from the conspiracy, which isn't alleged here. Yes, and then I think the question is, where was that conspiracy committed? The question is not, where was that conspiracy formed? Where was the agreement reached? Where is the first place that the elements are satisfied? Because it's continuing, and again, that is why the government benefits from charging someone where, for example, in Sitzman, where there is a single phone call to, let's say, Washington, D.C., that would establish that the conspiracy was committed in Washington, D.C. So the Constitution's asking, is asking where was the crime committed, not where were the elements satisfied, where is the first place that an act in a continuing offense took place? I'm not sure that it's, I'm not aware of any elements test for establishing venue. That's- I suppose there had never been any drugs imported. They just proved there was a conspiracy in Mexico to import drugs, and thankfully it was stopped before the drugs crossed the border. And that would be prosecutable as a conspiracy and for which venue could be assigned to the district. If, absolutely. If we know that the entire offense took place, if we know that the offense was not committed within any state, absolutely. The Congress can set venue wherever it wishes because the Constitution allows it. That's exactly what the Constitution says. If that is the only evidence, but that wasn't the only evidence in this case. The government did not have to join the Arizona and Mississippi counts in this case. It chose to do that. So by doing that, the government bound itself to the limitations of the Constitution. If there are no other questions on venue, I'm happy to move on. Just one quickly, which is what is the good cause for not having raised this pretrial? Which I think you have to have done. You have to raise pretrial unless there's good cause. I'd respectfully disagree that we have to show good cause at this point. Under Rule 12, a defendant can file a motion and should file a motion to dismiss where venue. Rule 12 does say must, but we're not at this point alleging that there was a defect in the indictment and asking to dismiss the indictment. We're proceeding under Rule 29. And venue is unique within Rule 12 as to because venue is actually the only, I guess, issue, objection, or challenge that is actually a question of sufficiency. So under Rule 29, we are allowed to challenge venue as an element at the close of government's case without having raised it as a pretrial question under Rule 12. You raised it at the close of the evidence for the first time? Venue, no, venue was not raised at all. When was the first time you raised it? The first time is in this appeal, in this court. That's correct. So there was a general motion for acquittal, but not a specific objection as to venue. That's correct. And as this court is aware, this general motion for judgment of acquittal preserves all elements of the offense and venue is an element of the offense. So we are in the position that we can challenge it and we should challenge it. And the only question is whether it was essential or not, whether there was any evidence of venue in Washington, DC. I don't think the government disputes that. This is, again, venue is unique in itself under Rule 12, but this is an unusual case in that the government presented absolutely no evidence of venue in Washington, DC. In most cases, there is a question. Venue is an element? Yes. You have to prove that to the jury? Yes, I mean, yes. I mean, it's an element that's proven by preponderance. I mean, the jury is instructed, but, and it's, it is an element, yes. I mean, it's not something that the government can ignore. Element provable by a preponderance? Sounds odd to me, but okay. That's what the Supreme Court, it's odd to us too. We would prefer that it be beyond a reasonable doubt, but that's the standard that the Supreme Court has set. But this court and the Supreme Court have clearly stated, United States v. Hare, that venue is an element of the offense that the government has to prove. So in the absence of any proof, the remedy is that, is reversal. I'd like to turn to the ineffectiveness claim if there are no other questions on venue. Counsel was ineffective in failing to request multiple conspiracies during instruction. The evidence clearly supported one, and the district court would have been required to give it. There was no conceivable strategic reason for counsel's failure. Ms. Fajardo-Campos' defense, as counsel presented it, was a reasonable doubt defense. Thus, the multiple conspiracy instruction would not have required an admission of guilt, as the government argues. And even if there were some inconsistency, counsel could have requested the instruction, and the jury would have been aware of the inconsistency of the instruction. Of its obligation to find, to decide whether a single conspiracy had been proven or whether multiple conspiracies had been proven. And counsel did not also have an obligation to argue it. Defense attorneys ask for instructions all the time and do not argue those specific instructions. So there was no strategic reason, conceivable strategic reason for counsel's deficiency in failing to request the instruction. You also raised a substantive claim about single conspiracy and multiple conspiracy, right? Not just with an ineffectiveness overlay. Yes, but I would say that the two arguments are distinct because prejudice under an ineffectiveness claim asks whether there's a reasonable probability of a different outcome, rather than simply whether the evidence was sufficient. And my substantive multiple conspiracy argument is essentially a sufficiency argument. Whether counsel should have requested this, should have requested the instruction establishes counsel's failure to request the instruction. Well, can you prevail on the ineffectiveness claim if you don't prevail on the, and I know you'll resist the assumption, but just for purposes of understanding how these arguments fit together, if you happen not to prevail on the substantive claim, can you nonetheless prevail on the ineffectiveness claim, even though the substantive claim as to which the instruction ostensibly should have been sought would have lost in the court on that assumption? Yes, yes, because again, the standard, and I understand that the standard is uncomfortable. I think Moyet even points out that it's an unfamiliar standard for courts to apply because it's speculative. And the standard for the ineffectiveness claim is whether there's a reasonable probability that any juror would have found, would have had a reasonable doubt as to whether the government proved single conspiracies or multiple conspiracies. And a reasonable probability is not even a preponderance. It doesn't ask whether the defendant was prejudiced as the substantive multiple conspiracy argument claim would, requires. It only asks whether at least one juror would have had a reasonable doubt as to whether the government proved the single or the multiple, whether there was actually a rim connecting the multiple conspiracies, whether a single juror would have had a reasonable doubt as to whether there was a rim connecting the multiple conspiracies. I think once we've established that there are multiple conspiracies based on the record evidence, it's inescapable that a juror would have had a doubt as to whether the government proved the single or proved the multiple. I think a jury instruction, and one example is the jury instruction in Tarantino that this court approved, simply asks that very question, whether the government proved a single conspiracy or multiple conspiracies. If the answer is yes, you don't move on to the second stage of whether the defendant was prejudiced, whether the evidence was sufficient, whether there was a more narrow conspiracy than the broader overarching conspiracy charged. And again, the government benefits from being able to charge multiple conspiracies in a single count. And it benefits because it can prove in the alternative, it can prove a more narrow, but there are consequences that go with that benefit. One of the consequences is that jurors should be instructed as to whether these multiple acts constitute a single conspiracy or whether they constitute multiple. The government didn't seek that, I understand defense counsel didn't seek that. My argument is that was ineffective. And this difficulty like in understanding like multiple versus single conspiracies is very fact-intensive. That's why this court has historically deferred to the jury's findings on multiple or single conspiracies because it is traditionally the jury's province to decide that. This issue, sorry, are you finished? When counsel fails to ask for that instruction for something that's so essential and so clearly like the province of a jury, the defendant has been prejudiced. This seems to all flow from your argument about material variance, right? The multiple conspiracy point. And I'm just having a hard time understanding that because the indictment is written in pretty broad terms, right? It's a conspiracy, it references conspiracy, the defendant together with others, doesn't say who, just anyone else. It says a conspiracy to distribute cocaine and methamphetamine. Doesn't have a lot of additional detail about with whom, when, which flights, right? And all of the subsidiary conspiracies that you're positing the jury might have found, I mean, any one of them fits within the general parameters of the indictment. And you haven't argued, I think, you haven't argued that the indictment was too vague to give you sufficient sense of what the trial was gonna be about. So how can there be a material variance? Well, if we're gonna stick to the strict language of the indictment, the indictment does charge a single conspiracy. And that conspiracy is not simply to distribute cocaine and not simply to distribute methamphetamine and not simply to manufacture methamphetamine. It is for all those three things, all three of those, like what I would say, separate conspiracies, all with the intent to import the cocaine or the methamphetamine into the United States. We know that most of these conspiracies for cocaine have no mention whatsoever of the United States. And the government has to prove actual knowledge and intent to import into the United States, not constructive, not just because I'm producing in Mexico and United States buys cocaine that there's an inference that it's headed to. If the government proved all of the elements with respect to cocaine, but not with respect to meth, that would be sufficient to support a conviction under the terms of this indictment, right? Well, my argument is that it's not, but. I mean, the and really is an or. Conspiracy to import cocaine and meth. They prove cocaine, they get a conviction. The problem, the problem is that the first question is whether they are single, it's a single conspiracy or multiple conspiracies. If your conspiracy is to import into the United States and one of the two conspiracies does not involve importation into the United States, there's a conflict between those conspiracies. You, by definition have two conspiracies, one to do something in Mexico, and the other to do something that impacts the United States. I also point out that. Right, but the verdict form and the jury instructions required proof of all of those elements. Importation, the only thing the verdict form did differently from the indictment was to separate the cocaine aspect of the case from the meth aspect and the jury convicted on both. Well, I'd respectfully disagree that the verdict form is the same as the jury instruction. I understand that- Sorry, did I? Same as the indict. It just breaks the cocaine issue apart from a meth issue. And the jury convicts on both. So what difference? The verdict form asks the jury to determine the quantity that the defendant is responsible for.  And that's the only place at which anything is broken apart, that there's any distinction made between cocaine or methamphetamine. And that quantity finding is not a matter of the jury. It's not a finding that there is a single conspiracy. To decide whether the government proved the elements of the offense, you have to back up to the actual instruction. And the actual instructions combine cocaine and methamphetamine at every step. They don't make a distinction at all. So the jury was never instructed that there is evidence of multiple conspiracies. There are conspiracies within conspiracies. Conspiracy, as this court has said, in a hub and spoke conspiracy, where you don't have integrated actors all working interdependently with one another. For example, a typical drug conspiracy would have a source who's supplying to someone who is distributing. And the distributor is then supplying to someone who's wholesaling. And the wholesaler is then supplying to someone on the street. The government didn't present any evidence of an integrated chain like that whatsoever. The government presented text messages and chats spanning two and a half years and conversations that span six years. Every conversation that Luz Fajardo-Campos had with someone where drugs was mentioned. We're not arguing that Luz Fajardo-Campos did not engage in drug trafficking. I'm arguing that she should have been found guilty of the conspiracy in which she participated. And there was not an overarching conspiracy to distribute cocaine, methamphetamine, and to manufacture. It's not just distribute cocaine and distribute methamphetamine and to manufacture methamphetamine all with the intent to import to the US. The government simply didn't establish one conspiracy. Suppose I disagree with you on, I'll just call them the really micro conspiracies, conspiracy with this guy to secure these flights to that city. I don't wanna break it down that finely, but I am interested in the issues we're discussing on the one point about whether the cocaine conspiracy is linked to the meth conspiracy. So help me out with that. I had thought that the verdict form solves that problem because the jury checks yes and makes up an amount finding, says yes to cocaine, yes to meth. So it doesn't really matter whether you think of them as one overarching or two separate. Help me with that. You're saying the jury and the jury was, don't break it up. No, and the government won't provide you any jury instructions with regard to the verdict because there aren't any. It says read the verdict. They essentially say read the verdict form and decide what quantity the defendant is responsible for. That's not a finding of guilt. I mean, I can't say that it's not a finding of guilt at all, but the guilt determination has already been made based on other instructions that do not separate out. So the judge says after, do not look at the verdict form until after you have decided guilt. So I understand. And the government has to do the quantity findings because of, because I think it's Eileen requires when you're seeking a mandatory minimum that the jury find the quantity that is the mandatory minimum. That verdict form was not designed and does not like accomplish the task of separating one conspiracy for another and asking the jury to make a determination whether a single or multiple conspiracies were proven. And why, last question on this line, why does any of that matter if the quantity finding for either cocaine or meth by itself is enough to just go almost off the charts on the guidelines and this is a case where there's a very substantial downward variance. So what are we arguing over? You get guilt as to both and. Well, if meth by itself is more than enough to support a sentence well above the one that was given. I think if the court, if you're looking at simply the jury findings of the mandatory minimum, I disagree that those quantities take the guidelines off the chart because the quantity that the jury found was 4.5 was, I think it's five kilograms of meth. Five kilograms or more of cocaine, 500 grams or more of meth. 500 grams or more meth. That's a pretty high number. Well, 500 grams or more meth is offense level 38 and five kilograms of cocaine is 28. The sentencing guidelines chart goes to 38. 22 years? Correct. Which corresponds to what, would correspond to what offense level? Something a lot lower, I assume. Um. 22 years corresponds to offense level 39. So there's a significant difference. If we're talking about sentencing as to the specific findings of, I mean, that's 262, if my math is correct, 22 years. Well, I'll check it. I got it. So. If my colleagues don't have additional questions, then we'll give you the time for a bottle, but I want to make sure to. Thank you. Thank you, Mr. Jack. Ms. Lloyd. Good morning, your honors. May it please the court, Alaya Lloyd for the United States. Turning first to the venue challenge, the defendant's venue challenge was untimely and meritless. Defendant has not shown good calls and even on plain error review has not satisfied her burden of showing that the district court plainly erred in allowing venue to occur in the District of Columbia. Starting first with the untimeliness of the challenge, numerous courts and the plain language of Rule 12B3 requires for a defendant to bring a venue challenge when the basis of that challenge is reasonably available to the defendant pretrial. And that's exactly what happened in this particular case. The defendant alleges that there's no tie to venue in the District of Columbia and those allegations were not in the indictment. The indictment does not allege that the conspiracy was entered into in the District of Columbia, that over acts occurred in the District of Columbia, that the defendant was arrested or first brought in the district from abroad, or that any acts occurred in the District of Columbia or any facts that would make support venue under other statutes. So that's an obvious alleged defect in the indictment, which brings this under the Rule 12B3 rules. Under those rules, Rule 12 requires good cause to consider untimely venue objection, which the defendant has not provided. So for those reasons, we think that the defendant's challenge- I'm gonna go to plain error instead of good cause. I understand and take your argument. But if we get to plain error, then I'd like to hear your response to the- Yeah, Your Honor. I heard about the constitutional provision. If we get to plain error, the defendant has not supported her burden of showing that the district court plainly erred. The defendant points to no cases where any of persuasive or bonding authority where a court has held that a conspiracy under 963 where the defendant has committed all of her acts and entered into the agreement abroad cannot be brought under the provisions of 3238 or 959C. And in fact, the government has pointed in its brief to five cases that hold otherwise. So the defendant has not met her burden of showing that there was a plainly erroneous decision by the district court. And we cited those cases on page 25. I mean, there's definitely case law, but just in terms of the language of the constitutional provision, the argument that we've heard is that it's true that the agreement might've occurred somewhere else, but the conspiracy is a continuing offense. And so if aspects subsequently occur here in a particular district, then it's not a situation in which the offense wasn't committed in any district because at least if the offense is a continuing one, then some of the offense was continued in some district here. And you have to bring the prosecution in one of those districts in that event, that it could have been brought just as a claim that involves an agreement full stop and that there was nothing introduced about where the continuing offense then was carried out. But this case is different because here there's a focus on Arizona and there's focus on two states where the continuing offense continued to occur. Well, Your Honor, first, I would point Your Honor to the indictment, which did not allege any overt acts or that the conspiracy took place. Although it did say it took place in the United States, it didn't say that it took place in Arizona or Mississippi or anywhere else. But secondly, I would also point Your Honor to the Supreme Court's decision in Whitefield, which says that for a conspiracy prosecution under the common law rule, the district in which the unlawful agreement was reached would satisfy the default venue rule. And here there's been no, then all of the evidence admitted by the government show that the unlawful agreement by this defendant was reached abroad, which then calls into play the constitutional structure that the Congress can then direct where venue may be held. And that is the two statutes that we've cited, 3238, as well as 959C. And the two courts, two of the courts in particular, Levy, Otto Parts in the Fourth Circuit and Miller in the Second Circuit, explicitly discussed the requirements of Article III, Section 2, when deciding that under 3238, when a conspiracy is essentially foreign, even where some of our acts or offense conduct occur in the United States, venue is still proper under 3238. And of course, venue was proper in this particular case under 3238, because the defendant who committed and begun her offense abroad had no last known residence in the United States and was indicted before being first brought or arrested to the United States. So we think clearly that the Constitution's requirements were satisfied. And of course, under Plain Air Review, the defendant is not pointed to any case that would hold to the contrary. The two cases that the defendant cited, Kobar actually is in our favor. One defendant who acted in the US, the court held there was no venue for, but the other defendant who acted extraterritorially, like our defendant, venue was found to be proper under 3238, but that a defendant was not first arrested or brought in DC, and so 3238 couldn't apply. That's not the case here where it does. And then Gilboa, which the defendant also cites, was held by Miller in the Second Circuit to be dicta. And so the Second Circuit holds that 3238 is allowed to provide for venue when certain offense conduct occurs in the US, so long as the conspiracy of the offense is essentially foreign, which is exactly the facts we have in our case today. I just wanted to address the idea that I think the defendant said that, no, I think that's all my thoughts on venue, Your Honors. And we've got the single and multiple conspiracy questions. Yes, happy to turn to- Just one quick question. The indictment alleges that the conspiracy happened in Colombia, Mexico, Ecuador, Panama, the US, and elsewhere. That's correct. You could sustain a conviction even if there were no acts in the US, and this is a charge about importing. So you would expect you need extraterritorial acts. You don't need acts inside the US. That's absolutely correct, although the government does take the position that there were overt acts shown in this case to be in the US. 963 under most case law, including this court, does not require an overt act to prove of the conspiracy or to be charged. And there were no overt acts charged in this indictment either. So I guess, I mean, if you think of conspiracy as continuing in the way that the chief judge was suggesting the indictment wouldn't really signal one way or the other whether the crime charged occurs in any state. That's correct. You wouldn't know. That's correct, which is why we think that's had to be a challenge brought to under 12B3 pretrial because there's an alleged defect that's obvious. And so the defendant had the basis for- Oh, I guess I was going the other way with that, which is it could be perfectly valid to convict based on extraterritorial acts. And if it was purely extraterritorial, then you would lie in DC. Yes. But on your opponent's theory, that depends on whether or not there were overt acts in the US. Well, Your Honor, we don't believe that the overt acts are necessary to the conspiracy charge, which is what Whitfield and the Supreme Court held for why venue will be proper where their agreement is reached. Okay. And as I also said, the other circuits have not yet decided or have decided that even if overt acts occur in the United States, so long as the conspiracy is essentially foreign, i.e. formed abroad, then 3238 applies even under the constitution and under plenary rule, which is what we're operating under, the plenary review standard. We don't think that the district court plainly erred in following the weight of the circuits. Okay. Turning to the variance issue, I just want to emphasize that the standard for this is in the light most favorable to the government drawing all reasonable inferences in its favor. And under that standard, the evidence clearly showed a single overarching conspiracy. The defendant known as LaDonna and the Godmother, titles given only to persons of status in a drug trafficking organization, oversaw the manufacturing and transportation of vast quantities of narcotics that were imported into the United States and elsewhere and distributed for profit. And the members of her organization, her children and other participants knew or must have known that others known and unknown to them were sharing in this large project, even if they didn't know who those people were or the parts that they played. Instead, the defendant is just pulling pieces of evidence piecemeal and in isolation when we need to look at the broader context and all the evidence that was admitted. So under this court's precedent, there are three main factors that we need to look at to see if there was a single overarching conspiracy. Those are a common goal, interdependence and overlap. And the evidence showed that all three of those factors were met in this particular case. Just giving some brief highlights of the evidence for each factor, the common goal was profiting from importing narcotics into the United States and elsewhere. Evidence showed that the defendant was the leader of a drug trafficking organization whose goal was to traffic cocaine and meth into Mexico and then out to the United States and other countries. There was testimony that the defendant sent her drugs to the United States and had distribution offices in multiple United States cities. And so all persons utilizing the defendant's distribution network shared in the same purpose. They all were trying to profit from the importation and distribution of narcotics. In terms of interdependence, there was overwhelming evidence that this was a single conspiracy. The main structure with the defendant at the head of it, with her children operating beneath her, with the defendant setting prices, authorizing the use of pilots and aircraft, organizing the transportation. Her children were acquiring customers and helping with the distribution. But this was a large-scale operation. This defendant was trafficking amounts of 250 kilograms of cocaine, vast amounts of precursor chemicals to make meth, stamping cocaine with her name on it as a brand. And there were repeated agreements with multiple other conspirators to distribute wholesale quantities of narcotics for distribution. In terms of the evidence for the United States distribution, there were multiple text messages where the defendant, in her own words, or other conspirators mentioned that the drugs were going to be heading to the United States. I point the court to the record in 1553 to 54, where the defendant and her daughter are discussing securing a charter to transport 500 kilograms of cocaine heading to the United States. Another at 1554 through 1555, where the defendant and her son Paco are discussing a cocaine load that's being sent to the United States. I also, the fact that the meth that the defendant was discussing with her son Activo was seized in Jackson, Mississippi. But nonetheless, there are other record sites, which we put in our brief, that show that other conspirators also asked the defendant or knew that the defendant was sending her drugs, including the cocaine and meth, to the United States. And what's your best evidence? There's, I think you're right. There's plenty of evidence of a large cocaine conspiracy, and same for the meth conspiracy. One of them, cocaine, you've got all the flights from Colombia to Mexico. Meth, you have the lab, which is running in Mexico. What's the evidence that this is one conspiracy rather than two, right? There's a cocaine ring and there's a meth ring. And why are they the same? Your Honor, that's our overlap factor. And that particular factor is supported by the fact that not only did the defendant participate in both schemes for meth and cocaine, but also her main collaborators, her children, participated in both schemes, the meth and cocaine. And so from that understanding, which I think the court held in Mathis, there's clearly overlap in an overarching conspiracy when the main figures are participating in both schemes. That's clearly satisfied by this particular case. With the sites that I already cited to you earlier about the defendant discussing with her children, both cocaine distribution and transportation, and meth distribution and manufacturing and transportation. So that's our best evidence, Your Honor. And all we need to find is legally sufficient evidence. Yes, Your Honor. But even if Your Honor- Is it basically a sufficiency claim? So it's if any rational juror could have found that there's the overlap you indicated so as to support the jury's determination that there was a conspiracy? Yes, Your Honor. It's a sufficiency claim, any rational juror, with all evidence being viewed in the light most favorable to the government. That's one way in which you could win. Yes, Your Honor. Could you also win based on the verdict form and the fact that the jury checks yes to both boxes? Yes, Your Honor. Or did we run into problems with the instructions as your friend was suggesting? Absolutely not, Your Honor. As you've already mentioned, we were allowed to prove in the conjunctive with Ann, or charge in the conjunctive with Ann, but prove in the disjunctive. And so the fact that the jury found both cocaine and meth is enough for us to sustain a verdict, but also whether they charged, if they found it together or separate, it doesn't matter. But more importantly, turning towards the jury instructions, the government believes that the instructions actually did inform the jury that they could prove or find a guilty verdict for cocaine or meth or both. And where, can you point us to where you're looking? Yes, Your Honor. If you look at the record site at 1653, the district court instructs the jury that- What's the volume of the- That would be volume seven. So 1653, the court instructs, and I'm cutting off a bit of the quote, but all 12 of you must unanimously agree- Where are you on the page? Oh, I see. I have it. No worries. All 12 of you must unanimously agree that Ms. Verhardl-Campos conspired to distribute the same controlled substance or substances for importation into the United States. A little bit further down, when the court instructs on the verdict form, the court also instructs, if you determine that the government- This is, sorry, 1723 through 24, also in volume seven. If you determine that the government has proven beyond a reasonable doubt that Ms. Verhardl-Campos conspired to distribute a quantity of cocaine and or manufacture or distribute a quantity of meth for importation into the United States, you must indicate her guilt on the verdict form and then make a determination as to the quantity of the controlled substances for which Ms. Verhardl is responsible. Your determination of those quantities, and this is me paraphrasing on 1725, must be unanimous. And you must be satisfied that the United States has proven those quantities of cocaine and meth beyond a reasonable doubt. So the jury was clearly instructed that they could prove on one, both, or the other. And I don't think there's any doubt once you look at the verdict form that they checked the box for both and found for both in the quantities that we needed and charged in the indictment. Conspiracy on sub A or count A. Conspiracy is shorthand for all elements of the conspiracy offense explained in the jury verdict. That's correct, Your Honor. And that's, I think, as you review 1653, which is the instructions on the substantive count versus the instructions at 1723 through 25 explaining the verdict form, those dovetail nicely in showing you have to find an overarching conspiracy. It can be for one of the drugs, both of the drugs, or the drugs separately. And then how you indicate that is the instructions for the verdict form. So I think the jury was well-instructed and clearly found the evidence supported the indictment charges and marked that on their verdict form. And finally, Your Honor, just turning briefly to the point on the guidelines. We do, or sorry, for the ineffective assistance of counsel claim, I'll turn to that one next. We believe that the record conclusively shows that counsel's performance was not deficient. The Strickland standard is highly deferential and there's a strong presumption that counsel's actions were reasonable. And that's particularly true in this circumstance. One, it was reasonable not to ask for multiple conspiracies instruction because the overwhelming evidence showed that the defendant was the leader of this overarching conspiracy. But two, as the Seventh Circuit pointed out in Driver, the defense counsel could have reasonably concluded that the strength of her claim to innocence would have been dissipated by arguing about multiple conspiracies. If you look at the defendant's opening and closing, the defense's theory was not just that there was no reasonable doubt, but that the defendant was actually innocent of any narcotics importation or distribution scheme. The defense claimed on multiple occasions that only an innocent person would let themselves come here and be subjected to a criminal trial to the full power of the United States. Or at 1711, this is also in volume seven, you should conclude that the only person who would come here voluntarily is somebody who was innocent and who had nothing to fear from the case against them. And there are other references throughout the closing, opening with the defense's theory being that she wasn't a part of this conspiracy, that you never saw any evidence of her meeting with cooperators, you never saw any evidence of her texting cooperators or conspirators, you never saw any cocaine seizures, you never saw any fingerprint evidence. It was just a litany on and on and on of the fact that this defendant had nothing to do with the evidence that was brought into trial. Not that there just wasn't a reasonable, but there was a reasonable doubt. So the gist of it is high risk, high reward strategy of trying to get outright innocence. And that would be undercut by an argument that maybe she was a part of this small agreement, but not that. Agreed, Your Honor. Any suggestion that she actually was dealing in narcotics would completely undercut their theory that she was 100% innocent and came to the United States because she had no worries, that she had nothing to prove. It's not the most normal thing to litigate ineffectiveness claims on direct appeal. And so just to play this out, if, I mean, in a lot of other courts, ineffectiveness claims aren't part of the appellate chain at all. They're raised on collateral review. In our court, we've allowed for a remand and then a consideration of an ineffectiveness claim as part of that process. If this were to go forward in the trial court, I take it then that the way that it would occur would be sort of like collateral review and you could actually have evidentiary development, including testimony from counsel to determine what they had in mind in making the kinds of assessments they did. And we're just kind of guessing at that. I don't think we're guessing, Your Honor. And that's because, once again, the standard is whether we give a highly deferential and strong presumption that counsel's decisions were reasonable under Strickland. And based on the evidence and the record of what the defense's theory is, we don't think that, we think that's conclusively met in this case. But even if you seem to think that there's some, you know, unconclusive evidence for whether or not performance was deficient, there was clearly no prejudice and the record conclusively establishes that. And you need to win on both prongs in order to get, or have a lack of conclusivity on both prongs to get a remand. So in this particular case, we do not think a remand is appropriate because the prejudice prong is clearly not met by the defense. What's the thumbnail on prejudice? Excuse me? What's the thumbnail on prejudice? Why is it conclusively? The thumbnail on prejudice is that there was overwhelming evidence proven at trial of a single conspiracy, which we've detailed, especially in our variance argument, but also that any potential prejudice that could have existed did not come into play in this trial. There was no evidentiary spillover. Every single message that was introduced, if not, almost every, if not all, involved the defendant. And all of them were her discussing actions that would have fallen intrinsically under the conspiracy charge. Her own words established that there was a single conspiracy. There were numerous times where she texted, I'm gonna bring planes for this, or for a US trip, or I'm gonna send you to Jackson, Mississippi, where then they seized methamphetamine. So there was no effect whatsoever on a lack of a multiple conspiracies instruction on whether or not the jury would have convicted this defendant. Thank you, counsel. Thank you, your honor. We ask that you refer. Jackson, we'll give you the three minutes you asked for for rebuttal. Thank you. With regard to venue, the government correctly points out, the government on one hand says that we haven't cited a case. COBAR is a case. COBAR is very clear and understandable, but we don't need a case because the Constitution itself sets the terms under which Congress can set venue outside the United States. The government, I think, wants to take the position that anything outside the United States is its own district. And that's fine for an offense that occurs entirely outside the United States. But if anything occurs within the United States, take, for example, let's say everything outside the United States was its own district called Texas. And you had the offense occur in Mississippi and Arizona. And the government brought an indictment here in Washington, D.C. We would have no problem understanding that that is contrary to the Constitution. And that's all that's occurring here. The Constitution sets the terms under which Congress can set venue outside the United States, and they're not met here. I would also point out that the government relies heavily on 3238. The plain text of 3238 says we're an indictment where trial shall take place. The first phrase says where trial shall take place. But the second phrase says that the defendant may be indicted in Washington, D.C. It does not say that trial shall occur in Washington, D.C. So even 3238 would be consistent with the Constitution if the government were reading it correctly. With regard to the variance, I just wanna point something out because the government makes a lot of representations about what the evidence shows and how Ms. Fajardo-Campos' children were involved. What it doesn't do is establish an agreement between Ms. Fajardo-Campos and her children. I understand that a close familial relationship suggests that there should be an agreement when one family member is talking about drugs with another family member. But the evidence established very clearly that Ms. Fajardo-Campos dealt with lots of different individuals. Those individuals did not talk with each other. So each time, even where she reached an agreement with someone, she didn't reach agreement and say, and by the way, my son is going to do this, or by the way, there's another person that is going to supply you this. It was always linear, Ms. Fajardo-Campos to the person she was talking to with no rim connecting anyone. What the government leaves out is that this court has emphasized that there has to be interdependency in order for there to be a single conspiracy. And there is no interdependency. There are, the government is, there is absolutely no evidence that cocaine was ever imported into the United States. There's none. There is evidence on two occasions, two, 2012 and 2015, that methamphetamine was ever brought into the United States. I've argued and I still maintain. And those two methamphetamine transactions involved entirely different players, three years apart in different geographic regions. And the only thing connecting them, none of them spoke with each other. None of them even knew of each other. None of them agreed to an overarching methamphetamine conspiracy. And for any, if you're just going to confine it to methamphetamine, you need the participants to know that they are dependent on other participants. That did not exist here. So I understand what the government is saying, but there's simply not each factor to establish a single conspiracy. Common goal, interdependency, and overlap. The government relies on overlap, but I'd ask the court to look carefully at the sites the government has provided, because the conversation with Arliss is Arliss asks, I'm sorry, the defendant's daughter asks for a plane and there's no resolution to it. It's not provided. How can that possibly be a conspiracy? And each citation that the government provides is similar. They don't establish even a small conspiracy, let alone one that's related to something much larger. Thank you. Thank you, counsel. So can I, I'm sorry, can I, the very last thing that I want to say is that this court recognized in Coughlin as the Supreme Court concurrence recognized in Griffin, that when the government charges multiple acts in a single count, it is very important that there are instructions. In Coughlin, this court didn't allow the government to change its theory from one single overarching conspiracy to a much smaller one. Albeit, that was a double jeopardy claim, but like the government did not allow the government, the court did not allow the government to change its theory as it has changed its theory here. The government did not argue below that there was some smaller conspiracy that the defendant was guilty of. The government argued below and at all times that this was one overarching conspiracy and everyone was involved and knew of everyone else. And that is simply insufficient, but at a minimum, defense counsel was ineffective for not asking for a jury instruction for the jury to make that determination. If there's any question of that about defense counsel's effectiveness, there should be a remand. Thank you. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan; Katsas; Rogers